**UNITED STATES DISTRICT COURT**
**FOR THE STATE OF RHODE ISLAND**

| | |
|---|---|
| H&H INTERNET, N.V., a Netherlands corporation,<br><br>v.<br><br>P.S.W., INC., a Rhode Island corporation, d/b/a PSW BILLING; and JOHN LOMBARDI, individually, | Case No.: 04-324-L |

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY ADJUDICATION; SEPARATE STATEMENT OF UNDISPUTED FACTS AND AFFIDAVITS OF JOHN LOMBARDI AND MICHAEL PERREAULT FILED CONCURRENTLY HEREWITH**

NOW COMES Defendants PSW, Inc. and John Lombardi hereby move for summary judgment or, in the alternative, for partial summary adjudication, pursuant to FRCP 56 and 56(d) in the above-entitled Court located at One Exchange Terrace, Providence, Rhode Island. Said Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Separate Statement of Undisputed Facts, the Affidavits of John Lombardi and Michael Perreault, oral argument (if necessary), the pleadings on file, and all other matters as may properly be considered.

The Motion for Summary Adjudication are on the following grounds:

1. The First Claim for Relief fails per the unambiguous terms of the written agreement between the parties.

2. The Second Claim for Relief fails to state a claim for which relief can be granted.

3. The Third Claim for Relief fails, as the specific funds sought to be recovered are not, and have never been, possessed or used by PSW.

4. The Third Claim for Relief fails, as a contract claim cannot be transformed into a conversion claim where the specific monies to be recovered are not segregated and identifiable.

5. The Fourth Claim for Relief Fails Because the Money Was Not Possessed.

6. The Fifth Claim for Relief Fails to Support a Claim for Relief for Fraud.

7. The prayer for punitive damages in the Third and Fifth Claims for Relief must fail because of the clear terms of the written agreement between the parties.

8. All claims for relief fail as to John Lombardi, who is not a party to any contract and is solely involved in this matter as an officer of PSW.

Dated: January 30, 2005

DAVID PAUL STEINER
CA State Bar #064638
David Steiner & Associates, a PLC
1925 Century Park East, Suite 2350
Los Angeles, CA 90067
Telephone: (310) 557-8422
Facsimile: (310) 556-0336

MATTHEW J. LEONARD
RI State Bar #6297
Salter McGowan Sylvia & Leonard, Inc.
The Heritage Building
321 South Main Street
Providence, Rhode Island 02903
Telephone: (401) 274-0300
Facsimile: (401) 453-0073

Attorneys for Defendant PSW, Inc. and John Lombardi

# TABLE OF CONTENTS

I. INTRODUCTORY STATEMENT....................1

II. STATEMENT OF FACTS....................1

III. LEGAL ANALYSIS

A. Standards of Decision....................4

B. The First Claim for Breach of Written Contract Fails as a Matter of Law, as PSW Has Not Received the Funds That Trigger its Contractual Obligation to Pay H&H....................5

C. The Second Clam for Relief for Breach of Implied Covenant Fails as a Matter of Law, Because PSW Has Not Taken Any Steps to Deprive H&H of Any of H&H's Rights Under the Agreement....................6

D. H&H's Third Claim for Relief for Conversion Fails To Support an Actionable Claim....................6

1. H & H Cannot Satisfy the Appropriate Element of the Claim....................6

2. H&H Cannot Identify the Alleged Converted Funds with Sufficient Specificity....................7

3. H&H's Conversion Claims is a Mislabeled Contract Claim....................7

E. The Fourth Claim for Money Had and Received Fails Because H & H Cannot Establish That PSW "Has" The Money at Issue....................9

F. The Fifth Claim for Fraud Fails to Establish an Actionable Claim....................9

1. H&H Cannot Support the Element of Wrongful Intent....................11

2. H&H Cannot Support the Justifiable and Detrimental Reliance Element....................12

3. FAC¶14(a)(1-4) - July 31, 2003 Notice from PSW Billing to Clients......13

4. FAC ¶14(b) - August 6, 2003 Official Statement....................14

5. FAC ¶14(c) - Articles on www.EbonyAdultResource.com....................14

6. FAC ¶14(d) - Article on www.AVNOnline.com....................................14

7. FAC ¶14(e) - Message on GFY Bulletin Board.....................................14

8. FAC ¶14(f) - Message on GFY Bulletin Board......................................16

9. FAC ¶15 and 18 - November 27, 2003 Notice to All Clients..................16

10. FAC ¶19(a-b) - November 13 and 16, 2003 emails to LePoutre.............17

11. FAC ¶19(c) - December 9, 2003 telephone call......................................17

12. H&H's Inclusion of Statements Made by PSW's Counsel Violates FRE 408..........................................................................................18

G. H&H Cannot Pursue Punitive or Exemplary Damages......................................18

H. All Claims Against Lombardi Fail As A Matter of Law....................................19

IV. CONCLUSION..........................................................................................20

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

Alterio v. Biltmore Constr. Co. (R.I. 1977)
377 A.2d 237 .......... 19, 20

Arch Lumber Co. v. Archibald (1958)
143 A.2d 679 .......... 20

Anderson v. Liberty Lobby, Inc. (1986)
477 U.S. 242 .......... 5

Brimbau v. Ausdale Equip. Rental Corp. (R.I. 1977)
376 A.2d 1058 .......... 15

British Airways Bd. v. Boeing Co. (9th Cir. 1978)
585 F.2d 946 .......... 4

Café La France, Inc. v. Schneider Securities, Inc. (D.R.I. 2003)
281 F.Supp.2d 361 .......... 11

Cardente v. Maggiacomo Ins. Agency, Inc. (R.I. 1971)
272 A.2d 155 .......... 20

Chedd-Angier Prod. Co. v. Omni Publ. Int'l Ltd. (1st Cir. (Mass.) 1985)
756 F.2d 930 .......... 13

Cliftex Clothing Co. v. DiSanto (R.I. 1959)
148 A.2d 273 .......... 9, 11

DeChristofaro v. Machala (R.I. 1996)
685 A.2d 258 .......... 6, 8, 9

Freeman v. Oakland Unified School District (9th Cir. 2002)
291 F.3d 632 .......... 4

Fuscellaro v. Industrial National Corp. (R.I. 1977)
368 A.2d 1227 .......... 7

Gibson County of Washoe (9th Cir. 2002)
290 F.3d 1175 .......... 4, 5

Grassi v. Gomberg (R.I. 1954)
102 A.2d 523 .......... 13

Kee v. National Reserve Life Ins. Co. (11th Cir. 1990)
918 F.2d 1538 .......... 8

Kelly v. Tillotson-Pearson, Inc. (D.R.I. 1994)
840 F.Supp. 935 .......... 11, 12

Kennett v. Marquis (R.I. 2002)
798 A.2d 416 .......... 20

Larson v. Dawson (R.I. 1902)
53 A. 93 .......... 7, 8

McGovern v. Crossly (R.I. 1984)
477 A.2d 101 .......... 11

McInnis v. AMF, Inc. (1st Cir. 1985)
765 F.2d 240 .......... 18

Mill Factors Corp. v. L S Bldg Supplies, Inc. (R.I. 1968)
240 A.2d 720 .......... 9

Ostalkiewicz v. Guardian Alarm, Div. of Colbert's Sec. Services, Inc. (R.I. 1987)
520 A.2d 563 .......... 18

Rhode Island Hospital Trust Hospital Bank v. Dudley Service Corp. (R.I. 1992)
605 A.2d 1325 .......... 18

Schott Motocycle Supply Inc. v. American Honda Motor Company Inc.
(1st Cir. (Me.) 1992)
976 F.2d 58 .......... 13

Shaffer & Max, Inc. v. JM Engineering, Inc. (D.R.I. 1994)
1994 WL 774682 .......... 8, 9

Star-Shadow Prods., Inc. v. Super 8 Sync Sound System (R.I. 1999)
730 A.2d 1081 .......... 18

Taylor v. List (9th Cir. 1989)
880 F.2d 1040 ........................................ 5

Terrien v. Joseph (R.I. 1947)
53 A.2d 923 ........................................ 7

THI-Hawaii, Inc. v. First Commerce Fin. Corp. (9th Cir. 1980)
627 F.2d 991 ........................................ 5

**Statutes**

Federal Rules of Civil Procedure, Rule 56(c) ........................................ 4, 5

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTORY STATEMENT.

This is not a matter that should be before this Court, and not a matter that can be won at trial by the plaintiff. The parties, formerly friends, entered into a simple business deal. Pursuant to that deal, the defendant company did everything in its power to provide services to the plaintiff. However, the nature of the parties' industry is such that their income is subject to the whims of Visa and Mastercard. It is because of these entities' mercurial attitudes, unpredictable policies and overwhelming power, that the defendant company uses an unambiguous form contract that says, "customers will be paid if and when the money is actually received, and no sooner." In other words, "if we don't get paid, no one gets paid." And Visa's and Mastercard's whims have destroyed the defendant company's business, as it has done to its competitors. Defendant company alone has dared to challenge them in Court, risking its own assets in the process. The plaintiff in this matter, fully aware of this rule, fully aware of Visa and Mastercard's actions, and fully aware of this bold lawsuit, has fabricated tort claims in a desperate attempt to be paid prematurely. After 1 ½ years on this docket, it is time for this matter to be put to rest.

## II. STATEMENT OF FACTS

John Lombardi is the co-founder, and currently sole stockholder, director and officer of PSW, Inc. PSW is a properly formed and maintained corporation.[1] *Undisputed Fact ("UF") 1-2*

[1]H&H has absolutely no legitimate reason to even try to pierce the corporate veil, as PSW is not taking the position that it does not have sufficient funds on hand to pay H&H (which is true, but irrelevant), but rather, that it is not required to do so.

*(Lombardi affd., ¶¶2 and Exh. M (Resp. To Interrogatory No.15))*. PSW is a third-party credit card processor that enters into contractual relationships with various entities and banks that have relationships with Visa and Mastercard. As a result of these contracts, PSW is able to facilitate credit card transactions for other companies, such as the plaintiff herein. Lombardi affd., ¶3.

H&H Internet NV is the Curaçao-based owner of various subscription-based pornographic websites. H&H's customers largely pay thru recurring monthly credit card transactions over the Internet.

On November 9, 2001, H&H entered into a written and signed agreement with PSW, so that PSW would process H&H's credit card transactions for a fixed fee (the "Agreement"). The Agreement was fully integrated, and pursuant to paragraph 18, "no Amendment or modification of this Service Agreement shall be valid unless in writing and signed by all parties hereto." *UF 5 (Lombardi affd., ¶4 and Exh. A¶¶18-19)*. There has only been one insignificant amendment, on December 5, 2002. Lombardi affd., ¶6.

Pursuant to the Agreement, PSW processed H&H's Visa credit card transactions thru its relationship with ECB-E-Commerce Billing and Processing Ltd., a company related to Leumi Card, Ltd. and Bank Leumi LE-Israel Ltd. (collectively, "ECB"), and Mastercard transactions through First Data Merchant Services Corporation and subsidiary Shared Global Systems, Inc. (collectively, "First Data"). On or about July 28, 2003, ECB ceased processing transactions for all of its customers, including PSW; this date is well-known in the third-party processing industry for the grave effects it had on many businesses. *UF 11-13 (Lombardi affd., ¶7)*.

H&H was immediately notified of this development, and agreed within 48 hours that PSW should process its subsequent Visa transactions thru JP Media Ltd dba eSHAX.com (which

had a contract with Deutche Bank), while continuing to handle Mastercard transactions thru First Data ("eSHAX.com"). *UF 14 (Lombardi affd., ¶8).*

First Data stopped processing for PSW on September 26, 2003. *UF 24 (Lombardi affd., ¶14).*

H&H consented to have eSHAX.com henceforth process all of its transactions through eSHAX's contract with Deutche Bank. This continued until late November 2003, when Deutche Bank closed eSHAX.com's account, keeping all of eSHAX.com's money (including PSW's, and thus H&H's money). *UF 25, 31 (Lombardi affd., ¶¶14, 19).*

At the current time, First Data possesses $1,600,000 of PSW's money (including $1,998.33 of H&H's money), and eSHAX.com owes PSW $210,000 (including $84,523.83 of H&H's money), which it will never be able to repay. *UF 42-43(Lombardi affd., ¶¶14,19,24,26 and Exh.O; Perreault affd., ¶2).*

On September 30, 2003, PSW sued ECB in the Southern District of Florida to recover monies pertaining to ECB's processing of PSW accounts. This lawsuit was settled via confidential settlement agreement on or about December 15, 2003. Unbeknownst to Lombardi and his attorney at the time of the settlement, ECB had not actually owed PSW any money pertaining to H&H's Visa transactions. *UF 27, 40 (Lombardi affd., ¶¶16, 22, 25, 26 and Exh.O; Perreault affd., ¶2).*

On August 16, 2004, PSW filed a complex antitrust action against First Data, Visa U.S.A., Inc. Mastercard International, Inc. and First Financial Bank in this Court, Case No. 04-347-T. *UF 41 (Lombard affd., ¶23).* Though this case is still pending, in the proceedings, First Data has admitted to withholding $1.6 million of PSW's money (including money owed to

H&H). Lombardi affd., ¶23.

On January 8, 2004, a little less than 45 days after PSW stopped processing transactions, H&H's collection agent Janet Conway began threatening PSW, making them adversarial parties from that date onward. *UF 38-39 (FAC 20; Lombardi decl., ¶25 and Exhs. K,L).*

Notwithstanding the fact that the vast majority of H&H's money is effectively unobtainable from Deutsche Bank, as PSW is not in privity with that company, PSW has generously offered on numerous occasions to pay H&H the entirety of its account when the First Data case is resolved. Lombardi affd., ¶24.

Ignoring the clear terms of the Agreement it signed, H&H filed this lawsuit on or about July 28, 2004, failing to attach the Agreement that shows that the case is not ripe for adjudication. Realizing that the original claims would necessarily fail, a First Amended Complaint was filed on or about November 10, 2004, adding an unprovable claim for fraud on the basis of nearly a dozen statements claimed to be misrepresentations. After 1½ years, H&H has had more than sufficient time to take discovery on each and every issue contained herein.

## III. LEGAL ANALYSIS

### A. Standards of Decision.

The moving party is entitled to summary judgment as a matter of law "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact..." FRCP 56(c); Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th Cir. 2002); British Airways Bd. v. Boeing Co., 585 F.2d 946, 951 (9th Cir. 1978). In assessing whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the non-moving party. Gibson v.

County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002). If the moving party meets its burden, the burden then shifts to the opposing party to present specific facts which show there is a genuine issue of material fact for trial. FRCP 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Conclusory allegations by the opposing party, unsupported by any factual material or evidence, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). If the moving party presents evidence which, taken by itself, would establish the right to a directed verdict at trial, the motion must be granted. THI-Hawaii, Inc. v. First Commerce Fin. Corp., 627 F.2d 991, 993-94 (9th Cir. 1980).

**B. The First Claim for Breach of Written Contract Fails as a Matter of Law, as PSW Has Not Received the Funds that Trigger Its Contractual Obligation to Pay H&H.**

H&H's First Claim for Breach of Written Contract fails due to the unambiguous terms of the Agreement. PSW has no obligation to remit monies which it has not actually received. *UF 10 (Lombardi affd., ¶4 and Exh. A ¶6).* Paragraph 6 of the Agreement states:

> The Company shall pay to the Client, if, as and when received from the Credit Card Service Company, the net amount payable by the Company hereunder with respect to such Customer Charges.

Lombardi affd., ¶4 and Exh. A (emphasis added). In this case, the relevant Credit Card Service Companies at issue are First Data and eSHAX.com.

There is no genuine issue of material fact as to the fact that PSW has not yet received $1,998.33 from First Data pertaining to H&H's processing, and does not expect to do so until that lawsuit is resolved, by trial or otherwise. *UF 42 (Lombardi affd., ¶¶14, 26, 30 and Exh.O; Perreault affd., ¶2).* Furthermore, there is no genuine issue of material fact as to the fact that

PSW has not received $84,523.83 from eSHAX.com pertaining to H&H's processing. UF 43 (*Lombardi affd., ¶¶19, 24 and Exh.O; Perreault affd., ¶2)*. PSW knows that it has no chance of recovering money from eSHAX.com through an expensive lawsuit, as that money is held by Deutche Bank, with whom PSW is not in privity. *UF 43 (Lombardi affd., ¶24)*. Thus, pursuant to paragraph 6, as a matter of law, PSW has no current obligation to pay H&H, and the First Claim necessarily fails as a matter of law.[2]

**C. The Second Claim For Relief for Breach of Implied Covenant Fails as a Matter of Law, Because PSW Has Not Taken Any Steps to Deprive H&H of Any of H&H's Rights Under the Agreement.**

This claim has never been explained by H&H. Since H&H can neither establish that PSW possessed money to which H&H claims a right, nor that PSW has taken steps intended to keep H&H from obtaining its funds (other than expending money to recover them, one must assume), this claim has no logical or factual basis. PSW has simply not used H&H's funds to support the lawsuits. *UF 45 (Lombardi affd., ¶23)*.

**D. H&H'S Third Claim for Relief for Conversion Fails To Support an Actionable Claim.**

**1. H&H Cannot Satisfy the Appropriation Element of the Claim.**

As quoted in DeChristofaro v. Machala, 685 A.2d 258, 262 (R.I. 1996), "[T]he gravamen of an action for conversion lies in the defendant's taking the plaintiff's personalty without consent

---

[2]Note that nothing in the Agreement requires PSW to keep H&H informed of its collection efforts. Moreover, the Agreement has neither been amended in writing to impose this requirement, nor has any unilateral promise to provide information been given for valid additional consideration, such as to make it not gratuitous and unenforceable. *UF 9.*

and exercising dominion over it inconsistent with the plaintiff's right to possession." Fuscellaro v. Industrial National Corp., 368 A.2d 1227, 1230 (R.I. 1977). The focus of inquiry is "whether [a] defendant has appropriated to his [or her] own use the chattel of another without the latter's permission and without legal right." Terrien v. Joseph, 53 A.2d 923, 925 (R.I. 1947).

As there is no genuine issue of fact as to the fact that PSW does not possess, and has never possessed, H&H's money processed by First Data or eSHAX.com but unpaid to PSW, this element of the claim cannot be satisfied. *UF 44 (Lombardi affd., ¶¶14, 19 and Exh. O; Perreault affd., ¶2)*. Furthermore, there is no genuine issue of fact that PSW has paid H&H any and all monies due with regard to ECB-related processing monies. *UF 37 (Lombard affd., ¶22 and Exh. O; Perreault affd., ¶2)*. Therefore, as a matter of law, H&H cannot proceed with its claim that PSW converted H&H's money.

**2. H&H's Cannot Identify the Alleged Converted Funds with Sufficient Specificity.**

The issue of whether conversion may lie for the failure to pay unspecified amounts of money due under a contract was first discussed in Larson v. Dawson, 53 A. 93 (R.I. 1902), in which the Court ruled that the money sought had to be "specific money." The court identified only five specific situations where money could be the subject matter of a conversion claim: (1) where a servant receives a some of money from his master and converts it to his own use; (2) where a person who receives money for safekeeping to be returned to the giver upon demand converts it to his own use; (3) where a person receives money rolled in a canvas belt for safekeeping and declines to return it; (4) where one takes money unlawfully from another's possession; and (5) where a bank treats a special deposit as general assets. None of these limited

scenarios apply here.

Shaffer & Max, Inc. v. JM Engineering, Inc., 1994 WL 774682 (D.R.I. 1994) discussed the issue in depth and determined that Lawson is still controlling law in Rhode Island. In rejecting the plaintiff's claim, the court noted the lack of allegations that the money was commingled rather than being kept in a separate, specifically identifiable account. Id. at *7; *see also*, Kee v. National Reserve Life Ins. Co., 918 F.2d 1538, 1541 (11th Cir. 1990) (money must be capable of identification).

The DeChristofaro Court also dealt with the concept of conversion of money. As the Court explained:

> Money, where specifically identifiable, is usually regarded as a form of property subject to conversion. This Court has held that the question of whether money can be the subject matter of an action for conversion generally depends on whether the defendant is under any obligation to deliver specific money to the plaintiff. Here the contract placed no obligation upon defendant to keep intact in specie the money paid by plaintiffs....The defendant remained free to spend the money as his own, without an obligation to segregate and return the specific money paid by plaintiffs or an obligation to expend that specific money, intact and not mingled with his own funds, for specified uses.

685 A.2d at 263. There is no genuine issue that there is nothing in the terms of the Agreement that requires PSW to maintain money in a segregated account for H&H, and in fact, PSW has never done so. That PSW assigns its customers "account numbers" is of no consequence. *UF 4 (Lombardi affd., ¶¶3-4 and Exh. A).*

Thus, H&H seeks conversion of an unidentifiable portion of commingled funds and cannot proceed with its conversion claim as a matter of law.

**3. H&H's Conversion Claim is a Mislabeled Contract Claim.**

Longstanding Rhode Island law holds that one cannot convert a cause of action clearly

sounding in contract into a tort action in conversion. DeChristofaro, 685 A.2d at 264. In Shaffer, the Court felt that the matter was a "straight breach of contract case" couched in tort language, and was concerned that the Plaintiff's argument would transform every breach of contract case involving the payment of money into a conversion case. 1994 WL 774682 at *6. H&H has clearly tried to do so, either to avoid paragraph 6 of the Agreement, or to obtain punitive damages. As a matter of law, the conversion claim must be dismissed.

**E. The Fourth Claim for Money Had and Received Fails Because H&H Cannot Establish That PSW "Has" The Money at Issue.**

A claim for "money had and received" requires that "one person has in his possession money which in equity and good conscience belongs to another." Mill Factors Corp. v. L S Bldg Supplies, Inc., 240 A.2d 720, 721 (R.I. 1968). Since PSW does not have H&H's money in its possession, this claim fails as a matter of law. *UF 44 (Lombardi affd., ¶¶ 14, 19 and Exh. O; Perreault affd., ¶2).*

**F. The Fifth Claim for Fraud Fails to Establish an Actionable Claim.**

Under Rhode Island law, "the plaintiff ha[s] the burden of proving that defendant made a false representation intending thereby to induce plaintiff to rely thereon and that it, plaintiff, did rely thereon to its damage." Cliftex Clothing Co. v. DiSanto, 148 A.2d 273, 275 (R.I. 1959). H&H has thrown over a dozen statements at the wall, hoping that one will support this claim.

As H&H refused to narrow this list in response to discovery, Defendants will be forced to address each and every one, no matter how frivolously included in the FAC. Lombardi affd., ¶27 and Exh. N (Resp. to Interrogatory No. 3). In doing so, it is important to keep in mind the timeline of the events at issue, as the alleged acts in reliance are that, based on the

misrepresentations, H&H "continued to do business with and to process funds through PSW" and "to forbear suit and collection efforts"(FAC ¶48):

- 11/9/01 - H&H processing begins thru First Data (Mastercard) and ECB (Visa).
- 7/28/03 - ECB shuts down. H&H Visa shifted to eSHAX.com within 48 hours.
- 7/31/03 - Notice sent to all PSW customers.
- 8/8/03 - Unauthorized PSW employee warns of potential PSW instability. Belief in PSW's invulnerable financial status no longer reasonable.
- 9/8/03 - AVNOnline.com interview concerning issues with First Data, Visa and Mastercard published. H&H made aware of the issue but continued to do business with PSW.
- 9/26/03 - First Data stops processing for PSW. H&H Mastercard shifted to eSHAX.com.
- 9/30/03 - PSW files suit against ECB.
- 10/29/03 - ECB contacts PSW's counsel. Confidential settlement negotiations begin almost immediately.
- 11/26/03 - ECB offers to release some funds.
- 11/26/03 - eSHAX.com shuts down. Notice sent to all PSW customers that PSW is no longer processing. H&H no longer "continued to do business with and to process funds through PSW" from this date onward
- 12/15/03 - ECB suit settled.
- 1/8/04 (est.) - H&H hires aggressive merchant processing and recovering agent. H&H no longer can claim that it "forbore suit and collection efforts" from this date onward.
- 7/28/04 - the instant action is filed.

- 8/16/04 - PSW sues First Data, Visa and Mastercard.

**1. H&H Cannot Support the Element of Wrongful Intent.**

"Intent to deceive is an essential element of an action of fraud." Cliftex, 148 A.2d at 275 (quotation omitted). After 2½ years of litigation, H&H cannot create a genuine issue of reasonable doubt as to PSW's lack of intent to deceive H&H. First of all, Lombardi has declared that he did not intend to deceive H&H. Until corrected by PSW's accountant in or around January 2004, Lombardi believed that ECB had withheld money related to H&H, and had relayed this incorrect information to his attorney. *UF 40 (Lombardi affd., ¶¶25-26).* "It has been well established in this jurisdiction that one who sues in an action for deceit has the burden of proving that the statements made were known to be false when spoken." McGovern v. Crossly, 477 A.2d 101, 103 (R.I. 1984). Even if he mentioned ECB as a source of money, Lombardi simply did not know that his statements about H&H being owed money from the pending ECB settlement were false.

H&H will have to resort to weaker, circumstantial evidence of intent to attempt to avoid summary judgment. The entire history of the communications shows a company bending over backwards to help its clients retrieve their money, even though nothing in their integrated Agreement requires it to do so. Furthermore, the fact that PSW has filed not one but two expensive lawsuits to get them that money belies any circumstantial evidence of wrongful intent. *See* Café La France, Inc. v. Schneider Securities, Inc., 281 F.Supp.2d 361, 375 (D.R.I. 2003) ("Mere conclusory statements regarding Schneider's state of mind, particularly in light of the attention that Schneider did actually devote to the IPO, do not suffice to prove a misrepresentation."); *see also*, Kelly v. Tillotson-Pearson, Inc., 840 F.Supp. 935, 942 (D.R.I.

1994) (granting summary judgment where circumstantial evidence fails to establish intent). *UF 27, 41 (Lombard affd., 16, 23).*

Unless H&H can bring out a nonexistent "smoking gun" document in which John Lombardi admits that he intended to mislead H&H for PSW's benefit, this claim must be dismissed as a matter of law.

### 2. H&H Cannot Support the Justifiable and Detrimental Reliance Element.

H&H will not be able to establish justifiable or detrimental reliance. The indisputable timeline simply does not support their claim.

- H&H shifted its Visa processing to eSHAX.com *before* the 7/31 alleged misrepresentations. *UF 14.*
- A PSW employee, although wrongfully believed to be authorized by H&H, warned clients on August 8, 2003, to diversify processors due to a volatile climate in the industry. *UF 51.*
- H&H learned of the brewing dispute with Visa and Mastercard no later than September 9, 2003, when H&H fist saw the first AVNonline.com article. *UF 23.*
- PSW ceased to process transactions on November 26, 2003, so H&H could not "continue to do business with PSW" in reliance on statements made from that date onward. *UF 32.*
- Once Janet Conway was hired no later than January 8, 2004, H&H can no longer make a colorable argument that it forbore collection efforts (for their unripe, and thus nonexistent, claims) after that date. *UF 39.*

- Lombardi learns that ECB had not actually held H&H's money. *UF 40.*

Given the fact that on August 8, 2003, Gardner, though believed by H&H to have authority to speak for PSW, warned clients about the volatile climate and recommended diversification away from PSW, H&H was put on notice that PSW's stability was not guaranteed. He stated:

> We have no intention of stopping our EU services and thus would never say "switch processors." However, in the current climate we would recommend that **anyone** spread out their assets (in the same way we are to ensure funds for our clients).

*UF 51 (Lombardi affd., ¶12 and Exh. F (emphasis in original)).* As a matter of law, the element of reliance cannot be established.[3]

**3. FAC ¶14(a)(1-4) - July 31, 2003 Notice from PSW Billing to Clients**

This press release is not actionable on the grounds that it is not false. First of all, the company's analysis of its financial condition is opinion. Second, as of this date, PSW had sufficient funds to operate, and had continued its processing activities through eSHAX.com. Third, as of this date, H&H had already agreed to shift processing to eSHAX.com, so reliance didn't occur. Fourth, at least part of this statement involved future events, and is thus not an actionable statement. Grassi v. Gomberg, 102 A.2d 523, 524 (R.I. 1954); Schott Motocycle Supply Inc. v. American Honda Motor Company Inc., 976 F.2d 58, 65 (1st Cir. (Me.) 1992); Chedd-Angier Prod. Co. v. Omni Publ. Int'l Ltd., 756 F.2d 930, 939 (1st Cir. (Mass.) 1985) ("case 'falls ordinary rule that false statements of opinion, of conditions to exist in the future, or

---

[3]Even if this forbearance of an unripe claim would legally constitute detrimental reliance, a delay from November 27, 2003-January 8, 2004 would support nominal damages at best.

of matters promissory in nature' are not actionable in a claim for misrepresentation.") Defendants did not intend for this statement to cause any detrimental reliance. *UF 14-15 (Lombardi affd., ¶¶8-9 and Exh. B).*

**4. FAC ¶14(b) - August 6, 2003 Official Statement**

This statement, made globally to all customers, whether relevant or not, is also true. Banking issues involving ECB were the cause of the missed payments to some of PSW's customers, through not H&H at this time. The statement about the release of funds concerns a belief in a future event, not a statement of existing fact. *UF 19 (Lombardi affd., ¶11 and Exh. E).*

Defendants did not intend for this statement to cause any detrimental reliance and H&H had already shifted its Visa processing to eSHAX.com. *UF 14, 20 (Lombardi affd., ¶¶8, 11 and Exh. E).*

**5. FAC ¶14(c) - Articles on www.EbonyAdultResource.com**

These representations about future events made in AVNOnline and published on September 9 and November 12 were not even made to H&H, and thus H&H cannot establish Defendants' intent to make H&H rely upon them. Furthermore, as H&H had already shifted its processing to eSHAX.com, it did not take any steps in reliance on the former. In any case, both of these articles put H&H on notice of the brewing dispute. *UF 21-23 (Lombardi affd., ¶¶13, 17 and Exhs. G, H).*

**6. FAC ¶14(d) - Article on www.AVNOnline.com**

This interview was published in August 2002 and was not made to H&H. *UF 50 (Lombardi affd., ¶5 and Exh. P).* H&H cannot seriously argue detrimental reliance under the auspices of Rule 11. In addition, at least part of this representation concerned future events, and

is thus not actionable.

### 7. FAC ¶14(e) - Message on GFY Bulletin Board

H&H alleges that *Lombardi* posted a message promising that PSW's "management would pay merchants 'out of our own pockets' to further ensure merchants were paid." FAC ¶14(e). Although the actual posting has not been produced in discovery, Defendants have located it online, and the actual statement was on August 3, 2003, by Matthew Gardner, a low-level employee of PSW involved in graphic design and sales. In fact, the writer identifies himself as "Matt" in the posting itself, and H&H has no evidence otherwise. Not only did neither Lombardi nor anyone else authorize Gardner to communicate on behalf of the company, or know about the posting, but it was in violation of official company policy. *UF 16-17 (Lombardi affd., ¶10 and Exhs. C, M (Resp. to Interrogatory No. 5))*. Under Rhode Island law:

> It is axiomatic that a corporation is liable only for those torts committed by agents acting within the scope of their authority or in the course of their employment....As a general rule, however, a corporation is no more liable than a natural person would be for torts not within the scope of the authority of its officers, agents or servants and committed by them outside of the course of their employment, unless it has expressly authorized or has ratified the same; and it can make no difference whether the officer, agent or servant undertakes to act for the corporation in a matter which is beyond his authority, or acts for himself.

Brimbau v. Ausdale Equip. Rental Corp., 376 A.2d 1058, 1064 (R.I. 1977) (*emphasis added and quotations omitted*).

In addition, the Court should take note that this allegation in the FAC is deceptively inaccurate with regard to its pluralization of the key word "pocket":

> Customer Question: "What *IF* the bank does NOT release said funds?"
>
> Gardner's Response: "It will be covered **out of our own pocket** because we're not going anywhere."

*UF 17 (Lombardi affd., ¶10 and Exh. C (emphasis in original)).* This involves future events and is thus not actionable. Regardless, in response to the apparent confusion following this statement, on August 6, 2003, Gardner clarified:

> As stated in the other thread, we apologize if the choice of words caused confusion. "Out of our own pocket" means that, if necessary, we would sell assets to make sure clients get the money they're owed. The point is that we're not going to run and hide with funds that belong to our customers.

*UF 16 (Lombardi affd., ¶¶10,12 and Exhs. D,F).*

Either H&H monitors this bulletin board and its inexplicable confusion was rectified, or in the alternative, H&H never saw either post until preparing the Complaint and pled reliance falsely. In either case, not only is there no plausible justifiable reliance, but in fact, H&H did not take any detrimental steps during these three particular days.

PSW has offered to pay H&H 100% of its money owed out of monies recovered from First Data, even though a good portion is held by eSHAX.com. Lombardi affd., ¶¶24-25. In other words, PSW has actually offered to pay H&H *from its own assets*, when it possesses them, and thus the unauthorized statement is true.

**8. FAC ¶14(f) - Message on GFY Bulletin Board**

Again, this unauthorized statement was made on August 26, 2003, by Gardner, and not Lombardi, without Lombardi's knowledge, and thus neither PSW nor Lombardi is liable for it. When Lombardi learned of it, Gardner was ordered to cease posting. *UF 16 (Lombardi affd., ¶12 and Exh. F).*

**9. FAC ¶¶ 15 and 18 - November 27, 2003 Notice to All Clients**

All portions of this statement involve future events and are thus not actionable. *UF 34*

*(Lombardi affd., ¶20 and Exh. J)*. PSW had no legally binding obligation to provide updates on the ECB or PSW matters, the former of which was in the middle of confidential settlement negotiations at this time, and the progress of both lawsuits are public information. *UF 9, 27 (Lombardi decl., ¶¶16, 22).*

There is no possibility that H&H can establish detrimental reliance on this letter or anything thereafter. As PSW's processing activities were now finished, H&H did not continue to do business with H&H after this statement was made. Moreover, within no more than 42 days, H&H had found and had hired a "merchant processing and recovery agent," showing a lack of actual forbearance. *UF 38 (FAC ¶20; Lombardi affd., ¶25 and Exh. K).*

**10. FAC ¶¶19(a-b) - November 13 and 16, 2003 emails to LePoutre.**

Lombardi promised (without consideration) to update LePoutre about the expected wire, then three days later actually did so, fulfilling this promise. Lombardi then assures LePoutre that they would be paid in full, "when the money [is] released from 3 banks."Not only was LePoutre put on notice of the fact that PSW's money was split between three banks, but he was told that PSW did not know when the money would be released. Until the First Data lawsuit is resolved, it is logically impossible for H&H to proceed with a claim that its money was actually lost by PSW. This is a great example about why an actionable representation must concern present facts and not future events. *UF 28-29 (Lombardi affd., ¶18 and Exh. I).*

**11. FAC ¶19(c) - December 9, 2003 telephone call**

This inaccurate statement concerns future events and is not actionable. At the time, Lombardi was not yet aware that ECB was not holding any of H&H's funds, as PSW's accountant had not yet corrected him. *UF 36, 37, 40 (Lombardi affd., ¶¶21, 22, 25, 26).*

PSW contends that the hiring of a merchant processing recovery agent within 30 days negates any claim of justifiable and detrimental reliance on the grounds of forbearance (of an unripe claim).

**12. H&H's Inclusion of Statements Made by PSW's Counsel Violates FRE 408.**

Pursuant to FRE 408, "Compromise and Offers to Compromise":

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.

FRE 408. It is indisputable that the statements alleged in Paragraphs 21-24 of the FAC are statements made during settlement discussions and may not be used for any purpose. McInnis v. AMF, Inc., 765 F.2d 240, 247 (1st Cir. 1985) ("rule illustrates Congress' desire to promote a public policy favoring the compromise and settlement of claims by insulating potential litigants from later being penalized in court for their attempts to first resolve their dispute out of court.")

**G. H&H Cannot Pursue Punitive or Exemplary Damages.**

"Limitation of Liability" provisions are routinely upheld by the Rhode Island Supreme Court. Ostalkiewicz v. Guardian Alarm, Div. of Colbert's Sec. Services, Inc., 520 A.2d 563, 565 (R.I. 1987) (rejecting unconscionability argument); Rhode Island Hospital Trust National Bank v. Dudley Service Corp., 605 A.2d. 1325, 1327 (R.I. 1992); Star-Shadow Prods., Inc. v. Super 8 Sync Sound System, 730 A.2d 1081, 1084 (R.I. 1999).

Paragraph 11 of the Agreement ("Limitations of Liability for PSW, Incorporated and the

Company) clearly states:

> In no event shall the Company be responsible for consequential damages or punitive or exemplary damages under any circumstances. In no case shall the Client be entitled to recover damages from the Company which exceed the sum of the Margin retained by the Company under this Agreement during the six months prior to the event giving rise to the claim for damages.

*UF 49 (Lombardi affd., ¶4 and Exh. A (emphasis added)).*

Thus, even if the conversion and fraud claims somehow survive, this provision severely limits the damages available as a matter of law.

**H. All Claims Against Lombardi Fail As A Matter of Law.**

H&H has prayed for damages against Lombardi personally for each of the five claims. There are no legally recognizable grounds for doing so.

As quoted in Alterio v. Biltmore Constr. Co.:

> The theory of corporate entity, fundamental as it is, should be disregarded only when the facts of a particular case warrant such disregard. In cases where the corporate entity has been disregarded there has been some element which rendered it unjust and inequitable to consider the corporation attacked a separate entity. In none of these cases, without such element appearing, has the corporate entity been disregarded.

377 A.2d 237, 241 (R.I. 1977) (citation omitted).

There is nothing unjust or inequitable about upholding the existence of PSW, Inc.'s corporate structure. PSW is a properly filed and maintained corporation, and has been since 1999. H&H filed the FAC without any evidence otherwise. *UF 1 (Lombardi affd., ¶¶1 and Exh. M (Resp. to Interrogatory No. 15)).* Moreover, the issue in this case is not whether PSW has the funds to pay H&H, but whether it is required to do so at this time. There is no genuine issue of material fact as to the fact that PSW has not used the corporate entity as a tool with which to

perpetrate a fraud. "Absent a showing of injustice, the corporate identity should not be disregarded." Id., citing Arch Lumber Co. v. Archibald, 143 A.2d 679 (1958).

"Moreover, the facts and circumstances of this case do not warrant holding defendant [Lombardi] liable as an agent of the corporation. 'It has long been settled that an agent acting on behalf of a disclosed principal is not personally liable to a third party for acts performed within the scope of his authority.'" Id., quoting Cardente v. Maggiacomo Ins. Agency, Inc., 272 A.2d 155, 156 (R.I. 1971); Kennett v. Marquis, 798 A.2d 416, 418-19 (R.I. 2002) (granting summary judgment for failure to establish that statements were made outside of scope).

It is indisputable that Lombardi is not a party to the written agreement. As in Alterio, the written contract clearly shows that H&H contracted with PSW, Inc., and Lombardi has not signed the Agreement in any capacity, whether as an officer or as an individual, nor agreed to be bound by it. *UF 6, 48 (Lombardi affd., ¶4 and Exh. A)*. H&H knew that it had signed a written agreement with PSW, Inc., and there is no genuine issue of material fact that Lombardi "used deception or made personal promises to induce the plaintiffs to enter into the contract. Thus, he is not liable for the claims sounding in contract." Alterio, 377 A.2d at 241. Any actions alleged in the FAC were taken as an officer of PSW. *UF 2-3 (Lombardi affd., ¶2)*.

To the extent that Plaintiff argues that Lombardi is personally liable as a result of the misquoted August 3 unauthorized website posting by which Matthew Gardner stated that PSW would pay out of its own "pocket," (FAC ¶14(e)), this cannot constitute an acceptance of personal responsibility by Lombardi. First, it is clear that this unauthorized statement is not a promise by Lombardi to personally assume corporate obligations, but rather, referred in the singular to PSW, the corporate entity. And Lombardi has declared that not only did he not make

that posting, but he never authorized or knew about it. *UF 16 (Lombardi affd., ¶10 and Exh. C)*. H&H's unsupportable allegation cannot be supported with evidence to create a genuine issue of material fact on the subject.

## IV. CONCLUSION

For the foregoing reasons, PSW and Lombardi respectfully request that the Court grant the motion and dismiss this matter.

Dated: January 30, 2005

DAVID PAUL STEINER
CA State Bar #064638
David Steiner & Associates, a PLC
1925 Century Park East, Suite 2350
Los Angeles, CA 90067
Telephone: (310) 557-8422
Facsimile: (310) 556-0336

MATTHEW J. LEONARD
RI State Bar #6297
Salter McGowan Sylvia & Leonard, Inc.
The Heritage Building
321 South Main Street
Providence, Rhode Island 02903
Telephone: (401) 274-0300
Facsimile: (401) 453-0073

Attorneys for Defendant PSW, Inc. and John Lombardi

**UNITED STATES DISTRICT COURT**
**FOR THE STATE OF RHODE ISLAND**

H&H INTERNET, N.V., a Netherlands corporation,

v.

P.S.W., INC., a Rhode Island corporation, d/b/a PSW BILLING; and JOHN LOMBARDI, individually,

Case No.: 04-324-L

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I have, on this date, either by hand delivered or mailed a copy of the **NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY ADJUDICATION; SEPARATE STATEMENT OF UNDISPUTED FACTS AND AFFIDAVITS OF JOHN LOMBARDI AND MICHAEL PERREAULT FILED CONCURRENTLY HEREWITH** on the persons listed below by first-class mail, postage prepaid.

VIA HAND DELIVERY:
Mark C. Hadden, Esq.
Law Offices of Mark C. Hadden
68 Kennedy Plaza, Suite 3
Providence, RI 02903

VIA FIRST-CLASS MAIL:
Michael Jason Lee, Esq.
Law Offices of Michael Jason Lee
15281 Normandie Avenue
Irvine, CA 92604

Date: January 30, 2006

Matthew J. Leonard