UNITED STATES DISTRICT COURT
FOR THE DISRICT OF RHODE ISLAND

H & H INTERNET, N.V., a Netherlands corporation

v. C.A. No. 04-324L

P.S.W., INC., a Rhode Island corporation, d/b/a PSW BILLING;

and JOHN LOMBARDI, individually

**HEARING REQUESTED**

# PLAINTIFF H&H's MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND REQUEST FOR RELIEF UNDER FRCP (e) and (f)

## I. Introduction, and Request for FRCP (e) and (f) Relief

Plaintiff notes that this memorandum is in supplementation to the objection previously filed 2-14-06. As indicated in plaintiff's request for further time to file this memorandum, plaintiff again indicates that one of its affiants, Marc LePoutre, the former finance manager to whom Lombardi made a number of misrepresentations, is away in Argentina, evidently on a form of safari trip where contact is not available. It has been learned that he is not to return home until March 1. Despite its best attempts to obtain the signature on the affidavit, it is here submitted pending that final signature, and leave to so file it at that time is requested.

Plaintiff also notes that discovery does not close until March 7, 2006, and that plaintiff believes that it is entitled to supplement this opposition, in any event, pending completion of the depositions of defendant Lombardi (attempted for confirmation for the period of March 3 through 7), as well as defendant's accountant who has been subpoenaed to appear on March 3, 2006 (though counsel have discussed times

in the following week). Both of these individuals have submitted affidavits providing information not previously disclosed by defendants in document and interrogatory responses and they should be subject to deposition before being allowed to rest on their (disputed) affidavits, as permitted by FRCP 56 (e) and (f).

In addition, a subpoena has been issued for the appearance of Matthew Gardner, former employee and now the subject of testimony by way of Lombardi's just-filed affidavit.

## II. Factual Background

The factual background of this claim has (perhaps in greater detail than necessary) been delineated for the court in the plaintiff's Amended Complaint dated 11-10-04, and need not be repeated here. To the extent necessary to demonstrate that questions of fact exist that require this matter to be decided by a jury, four affidavits and 13 Exhibits have been submitted for the court's examination, along with Plaintiff's Opposition to the Statement of Undisputed facts by Defendants.

## III. Receipt of Funds, and for Money Had and Received

This issue presents a question of fact as demonstrated by the analysis of Affiant Michael Conway, who has delineated for the court that funds coming from the PSW settlement with ECB were in fact from funds owing to H&H. See, Attachment C.

## IV. Breach of Implied Covenant, and Conversion

The Affidavit of Mr. LePoutre demonstrates the long history of false assurances of payment, a deceitful ruse that Lombardi had no intention of completing. In addition, PSW's ultimately received, in the hands of the client account of its attorney, Mr. Steiner, H&H's money after their settlement with ECB. It was not remitted to PSW, but used elsewhere, and on information and belief, by Mr. Lombardi who is also represented by Mr. Steiner. This awaits further confirmation by the depositions of both of them in the next two weeks. The specificity of the converted funds, in accounts earmarked for H&H, was admitted by Lombardi when he attempted to reassure plaintiff's manager Mr. LePoutre. See, LePoutre Affidavit, Attachment D. Steiner, too, confirmed that the money from the ECB settlement was H&H's money. See, J. Conway Affidavit, par. 15, and Exhibit 11, par 20-24. The money was identified and converted, and the issue should be presented to the jury. Even the Larson court, (Larson v Dawson, 53 A. 93 (R.I. 1902)) recognizes that a bank has liability for conversion when it treats a special deposit as general assets, an act that defendant evidently admits. See, Lombardi Affidavit. The law should not be so inflexible as to resist application to modern circumstances.

**V. Fraud**

Plaintiff's allegation of failure of proof of detrimental reliance is wishful thinking. The LePoutre Affidavit, as supported by an analysis of the other affidavits, demonstrates that Mr. LePoutre was intentionally duped by Lombardi to continue processing through PSW despite the fact that PSW's financial ship was sinking and Lombardi was waving the flag while partially submerged, in the face of the mutiny of 85% of his clientele. See. LePoutre Aff., J. Conway Aff par. 6-9. Though PSW's ship was sinking in August,

LePoutre continued to process through PSW based on Lombardi's misrepresentations through November, with losses at detriment to the extent of $142,000. That is reliance demonstrated by action, not words.

Defendant places much reliance on its argument that representations of future conduct are not actionable, and cites Grassi v Gromberg, 81 R.I. 302, 102 A.2d 523, 524 (R.I. 1954) that the misrepresentation must be of existing fact. However, defendant misses the point of the case. In that case, the court approved the jury instruction (and upheld the verdict) as to whether the defendant actually had the intention to act in accordance with the representations made at the time such representations were made. It is the truthfulness of the representation made that determines the fraudulent act, with reasonable reliance and detriment to be other elements of proof. See, Grassi 81 R.I. at 305-6. The affidavits delineate a long course of conduct whose pattern clearly shows an intent to deceive and to keep H&H's business despite the fact that PSW's business was failing, reasonably relied upon by H&H to its detriment.

## VI. Statements of PSW Counsel of January, 2004

Federal Rule of Evidence 408 does not apply, nor does it hold inadmissible the statements and the allegations in Paragraphs 20 through 24 of the Amended Complaint (Ex. 11), as based on the affidavit of Janet Conway, par. 15, relating to Mr. Steiner, defendants' counsel.

### A. FRE 408 is a rule of evidence and does not apply because, even at trial, the allegations of these paragraphs may be admitted by other means, or for purposes other than those to which the rule applies.

Federal Rule of Evidence 408 only prohibits the introduction into evidence at trial of certain conduct or statements, however, the rule does not prohibit the same evidence being presented by other means at trial:

"The rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations." FRE 408. Likewise, "This rule also does not require exclusion when the evidence is offered for another purpose…" other than liability for the claim. FRE 408. The kernel of the improper and fraudulent conduct now alleged may otherwise be admissible at trial by any means, through other witnesses, documents, or otherwise. Accordingly, FRE 408 is not even of application at this early pleading stage.

B. The statements at issue do not relate to "compromise" nor to a "dispute" as to "validity or amount" of the H&H claim.

Nonetheless, even at trial, these statements will be admissible and the rule inapplicable. FRE 408 only prohibits the introduction into evidence of offers and acceptances (and promises of the same) of a valuable consideration:

(a) "in compromising or attempting to compromise a claim"

(b) "which was disputed as to either validity or amount"

(c) which thus "is not admissible to prove liability for or invalidity of the claim or its amount."

In addition:

(d) ""Evidence of conduct or statements made in compromise negotiations is likewise not admissible."

FRE 408 (emphasis added).

The "claim" that was the subject of the phone conversations recounted in paragraphs 20 through 24 (and in other paragraphs as well) was the claim of H&H for payment due

from its customers that were processed by defendant's credit card processing business, and that defendants thus owed to H&H.

A reading of the contested paragraphs demonstrates that these were not discussions of a "compromise" of any sort relating to the H&H claim. Demand was being made by H&H for full payment, pure and simple. There was no offer of compromise, nor was there a promise or acceptance of compromise referenced in the allegations of these paragraphs relating to H&H's claim.

In addition, neither the amount nor the validity of the claim of H&H is "disputed" during the course of the statements offered in paragraphs 21 and 24. In fact, the context of the conversations is that defendants attempted to give an excuse for nonpayment to H&H because defendant supposedly had not received funds from others that were then to be transferred to H&H. Plaintiff now contends that defendant never intended to forward payments to H&H, in furtherance of defendants' fraudulent scheme that had been ongoing for months. In fact, the only "litigation discussions" referenced relate to defendants' litigation efforts to obtain money from another party, a payment that had in fact already been received by defendants, and was then owed to plaintiff! Neither the amount nor the validity of the claim of H&H, nor a compromise was at issue. Demand was made and payment refused for reasons knowingly untrue.

Ironically, Lombardi now creates a new story that, despite his specific representations to the contrary – and Steiner's same representation - this settlement money was not that of H&H. This will surely be a question of fact before the jury at trial. Accordingly, Janet Conway's conversation with Steiner will be admissible at trial to

show the receipt of money specifically owing to plaintiff, as well as the continued shell game being used to convert those funds.

## VII. Plaintiff's Damages are not Limited by the Contract

Defendants evidently seek to strike the claims for punitive damages appended to the causes of action for Conversion (Third Count) and Fraud and Deceit (Fifth Count).

Defendants seek to use a contractual exclusion against the award of punitive damages to immunize both defendants from damages available for tort causes of action.

First, the clause seeks to limit such liability for "the Company." The exclusion says nothing about Mr. Lombardi nor does it contain any language so attempting to immunize the officers, agents or employees of the company. Such contractual exclusions obviously drafted by PSW itself should not extend beyond their own terms (if enforceable, and it is not), and if vague, must be construed against its drafter, PSW. Thus, Lombardi cannot in any event avail himself of the exclusion.

The punitive damages in our case are sought not for breach of contract but for the tort causes of action. The real issue is whether R.I. permits the allegation of a tort claim, of either fraud or conversion, concomitant with a breach of contract action. Clearly, the answer is yes. See, Reccko v Criss Cadillac, 551 A.2d 20 (R.I. 1988) (Recco I), 588 A.2d 615 (R.I. 1991)(Recco II), and 610 A.2d 542 (R.I. 1992)(Recco III). The R.I. Supreme Court specifically ruled that the action of rescission of the contract did not preclude the claim for alternative tort remedies. Id. 551 A.2d at 21; 588 A.2d at 615-16. In fact, Recco was awarded punitive damages. While Recco did not involve a contractual exclusion, the essence of the decision is that tort and contract causes of action are

distinct, each with its own damages and remedies, despite the fact that both causes of action arose out of the same set of facts.

Furthermore, in Ostalkiewicz v Guardian Alarm, 520 A.2d 563 (R.I. 1987), the court did in fact deal with a general contractual exclusion with a liquidated damages provision, coupled with a fraud claim against the company. Despite upholding the validity of the general damages exclusion in this particularized field of business (where different public policy may protect an alarm company), the fraud counts and the claims for punitive damages proceeded. The claim in our case for punitive damages is not to be treated otherwise, and should proceed as identifiable damages for the tort counts. Likewise, in our case, all remedies for the distinct causes of action should survive.

In essence, the defendants assert that R.I. law permits one to immunize itself (or himself) from liability, and liability from exemplary damages, from future fraudulent tort conduct by a contractual exclusion. No case supports this assertion. In fact, given the fact that the public policy supporting punitive damages is to punish intentional wrongdoers, defendant's assertion flies in the face of R.I. public policy as described by the R.I. Supreme Court. Cf., Allen v Simmons, 533 A.2d 541 (R.I. 1987), where the court refused to saddle insurers with punitive damage awards and reiterated that such a ruling would defeat the public policy behind punitive damages to punish wrongdoers.

Accordingly, the punitive damages counts survived, and the alleged contractual limitations must fail.

## VIII. Lombardi Personal Liabilty

" [W]hen the facts of a particular case render it unjust and inequitable to consider the subject corporation a separate entity, we will not hesitate to disregard the corporate form and treat the defendant as an individual who is personally liable..." National Hotel Associates v O. Ahlborg & Sons, Inc., 827 A.2d 646 (R.I. 2003). Thus, "if the individual's actions partake of fraud or are otherwise criminal, or if they serve ... personal interests as distinct from those of the corporation, a court may be willing to disregard the fiduciary shield." Video Products Distributors v. Kilsey, 682 A.2d 1381 (RI 1996) (citing 4 Wright & Miller, Federal Practice and Procedure Sec. 1069).

Alterio v Biltmore Construction Corp., 377 A.2d 237 (R.I. 1977), although refusing to pierce the veil in that case, noted that factors that would so permit would include whether the defendant had personally promised to perform or had used deception to induce plaintiffs to enter into the contract. Id. at 316. In our case, not only did Lombardi repeatedly use the assurances that "I" will see that you get paid (etc.) as an inducement for plaintiff's continued business, but he repeatedly and intentionally misrepresented the state of his financial affairs – in direct response to plaintiff's concerns about same – in order to continue to process and collect plaintiff's earnings. See, LePoutre Aff, Attachment D; Plaintiffs A/I, Ex 12 and 13, J Conway Aff. re actual state of PSW finances.

The criteria for imposing personal liability beyond the corporate veil is highly fact driven, and ought generally go to the jury. Muirhead v Fairlawn Enterprises, 72 R.I. 163, 48 A.2d 414 (R.I. 1946) (where "there is such unity of interest" for the individual who was the sole shareholder, owner, manager, with complete control of the enterprise,

there was presented a question for the jury). Accordingly, there is more than enough evidence for this matter to go to the jury on Lombardi's personal liability, and whether it would be equitable to hold him accountable for his intentional misrepresentations.

WHEREFORE, plaintiff requests that (1) it be entitled to supplement this submission with the results of further discovery, set to close March 7, 2006, under FRCP (e) and (f), before hearing, and (2) that defendants' motion for summary judgment be denied.

Plaintiff,

by its attorneys,

Mark C. Hadden / RI Bar # 3101
Law Office of Mark C. Hadden
68 Kennedy Plaza Suite 3
Providence, RI 02903
401-274-0909 (f) 401-274-5455
mhadden@mhaddenlaw.com

Michael J. Lee
Law Offices of Michael Jason Lee
15281 Normandie Ave.
Irvine, CA 92604
949-551-1575
(F) 949-551-1590

Dated February 23, 2006

CERTIFICATION

I certify that a copy of the within pleading was forwarded to the counsel below, first class mail, postage prepaid, on the 23 day of February, 2006.

Matthew J. Leonard
Salter McGowan Sylvia & Leonard, Inc.
321 South Main St.
The Heritage Building
Providence, RI 02903

David Paul Steiner Fed Ex
David Steiner & Associates, PLC
1925 Century Park East, Suite 2350
Los Angeles, CA 90067