UNITED STATES DISTRICT COURT
FOR THE DISRICT OF RHODE ISLAND

| | |
|---|---|
| H & H INTERNET, N.V., a Netherlands corporation,<br><br>Plaintiff,<br><br>v.<br><br>P.S.W., INC., a Rhode Island corporation, d/b/a PSW BILLING; and JOHN LOMBARDI, individually, | Case No. 04-324L |

**PLAINTIFF H & H INTERNET'S FILING OF AFFIDAVIT IN SUPPORT OF PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff here files the executed affidavit of Marc LePoutre, attached. As revealed to the court at the original time of submission, this affidavit was originally filed in unexecuted form at a time when the affiant had left for Argentina and was no longer available to execute and confirm its final provisions. It is here submitted in final and executed form, and plaintiff wishes to give notice to the court and the parties that there were some revisions made by Mr. LePoutre upon his return at the time of signing.

Respectfully submitted,
H & H INTERNET, N.V.
By its counsel,

Michael Jason Lee
Law Offices of Michael Jason Lee, APLC
California Bar # 206110
15281 Normandie Avenue
Irvine, California 92604
(949) 551-1575
FAX (949) 551-1590

Mark C. Hadden #3101
Law Office of Mark C. Hadden
68 Kennedy Plaza, Suite 3
Providence, Rhode Island 02903
401-274-0909
FAX 401-274-5455
mhadden@mhaddenlaw.com

CERTIFICATION

I certify that a copy of the within pleading was forwarded to the counsel below, by United States mail, postage prepaid, on the 3 day of March, 2006.

TO:

Matthew J. Leonard
Salter McGowan Sylvia & Leonard, Inc.
321 South Main Street
The Heritage Building
Providence, Rhode Island 02903

David Paul Steiner
David Steiner & Associates, PLC
1925 Century Park East, Suite 2350
Los Angeles, California 90067

I, Marc LePoutre, do hereby declare:

1. I am the former financial manager for Plaintiff H & H Internet, N.V. ("Plaintiff"). I make this declaration of my own personal knowledge, and could and would testify as to the matters contained herein under oath.

2. The spreadsheet attached as Exhibit 4 to the Affidavit of C. Michael Conway is a true and accurate copy of the actual spreadsheet Plaintiff maintained to track data, much of which was taken from information maintained in a password protected area on PSW's website, relating to its processing activities with P.S.W., Inc. ("PSW"). The document was assembled and maintained by Plaintiff in the normal course of business.

3. I had several conversations with Defendant John Lombardi ("Lombardi") of PSW (Lombardi and PSW are collectively referred to as "Defendants") from August 2003 through December 2003. Because PSW began repeatedly missing scheduled payments in early August 2003, I began asking Lombardi questions about PSW's financial situation in mid-August 2003. On at least two occasions I asked him about the manner in which PSW was holding Plaintiff's reserve funds on its behalf. Lombardi specifically advised me that Plaintiff's reserve funds were not being co-mingled with other company monies.

4. I spoke with Lombardi on at least three separate occasions from October 2003 to December 2003 about the lawsuit PSW filed against ECB Processing and related parties in a federal court in Florida. I have since learned it was a case once pending in the United States District Court, Western District of Florida captioned PSW, Inc. v. ECB Processing, *et al.* ("ECB litigation"). Lombardi repeatedly assured me that Plaintiff would be receiving a substantial payment once the ECB litigation was resolved and PSW received its settlement payments,



M M

several times suggesting that payment would be around six figures. He repeatedly promised to keep me apprised of settlement developments and timetables for receiving settlement funds.

5. On December 9, 2003, Lombardi advised me that the ECB litigation had been settled and he had yet to receive a payment but was expecting a wire to hit his attorney's trust account within the week for $500,000, said monies constituting a partial payment of settlement monies due. He explicitly stated that Plaintiff would receive a substantial payment once the funds were received. However, Lombardi did not follow through on his promise, as he failed to report receipt of any settlement funds, which is especially notable since I am informed and believe that PSW received at least two separate payments that totaled nearly $1 million.

6. As a result of the need for a processing relationship to satisfy the contractual obligations between PSW and their clients, Defendants entered into a contractual relationship with to obtain processing through JPMedia. This processing relationship appeared to last only several weeks before Lombardi advised that they no longer would be able to place the PSW business through JPMedia.

7. Lombardi contacted Plaintiff and, through several discussions, advised Plaintiff of the immediate and seamless processing that he could offer Plaintiff if Plaintiff would transfer their processing to a company called "Jettis" in California. Lombardi advised Plaintiff that, "PSW had made arrangements for a smooth transition of your accounts to Jettis, at a deeply discounted rate of 12%." Plaintiffs were further advised that all they needed to do was to reply to an email with a listing of the URL's that they wished to setup, and that "PSW would facilitate the transfer of the account to Jettis as quickly and smoothly as possible." Lombardi further assured Plaintiff that he would monitor the relationship to better ensure everything went smoothly.

8. Plaintiff monitored PSW's posting on the bulletin boards maintained on the GFY website. Plaintiff relied on Defendants' representations to better gauge the health and viability of PSW, namely the reliability of its processing services, its commitment to continue processing despite processing obstacles created through new processing regulations and its commitment to recovering funds allegedly withheld by third parties. It was these very representations that caused Plaintiff to continue processing with PSW, which it would not have done had it correctly been correctly advised of the actual risks of continuing to process with PSW.

9. Lombardi was well aware that Plaintiff and other Clients of PSW closely monitored the information PSW was publicly disseminating, including information posted on the GFY bulletin board by PSW. In fact, I had a conversation with Lombardi about this precise issue in early August 2003. He explicitly acknowledged awareness of the postings on GFY in early August 2003, meaning he had knowledge of postings well before August 26, 2003, his claimed date of first knowledge.

10. The representations Lombardi made to me in his e-mails to my attention dated November 13 and 16, 2003 are patently false.

(a) By way of select example, Lombardi states in his November 13, 2003 e-mail, "[Y]ou will be the first to hear when a wire comes. I will take care of you." As detailed in paragraph 4 (above), Plaintiff was never contacted regarding the receipt of any wires whatsoever.

(b) By way of select example, Lombardi states in his November 16, 2003 e-mail, "I haven't seen a wire ... One thing I do know is you will lose no money with us." I am informed and believe that PSW still has yet to satisfy a balance owed to

Plaintiff that I recall was approximately $142,000 as of the date I left my position as financial manager for Plaintiff.

11. The two e-mails from Lombardi set forth in Exhibit L to his affidavit illustrate the standard protocol: sidestep providing clear and accurate information and make promises regarding his intention to make Plaintiff whole. Regardless of whether or not Defendants and Plaintiff were in an "adversarial posture," Plaintiff still expected Lombardi to be truthful and true to his word.

I declare that the foregoing is true and correct pursuant to the laws of the United States of America. Executed on February 16, 2006 at London, England.

Marc LePoutre

WITNESSED BY MR. L. BONNET

ON: