UNITED STATES DISTRICT COURT
FOR THE STATE OF RHODE ISLAND

| | | |
|---|---|---|
| H&H INTERNET, N.V., a Netherlands corporation, | ) | |
| | ) | |
| v. | ) | Case No.: 04-324-L |
| | ) | |
| P.S.W., INC., a Rhode Island corporation, d/b/a PSW BILLING; and JOHN LOMBARDI, individually, | ) | |

**DEFENDANTS REPLY TO PLAINTIFFS OBJECTION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY ADJUDICATION and AFFIDAVIT OF MATTHEW GARDNER**

Defendants respectfully Reply as follows:

## I. INTRODUCTION AND COMMENT ON DISCOVERY

This Reply is the second reply brief filed by Defendants, with the first being filed before Plaintiff's second attempt at a Motion to Extend the time to respond.[1] Because the Court has not ruled on that untimely request, Defendants feel obligated to preserve their rights through this document.

It cannot be forgotten that Plaintiff ultimately bears the burden of proof. Plaintiff seeks an unprecedented right to "supplement" its Opposition after the close of discovery. Yet Plaintiff cannot even provide the requisite showing of diligence in discovery efforts *prior to the filing of the MSJ* necessary for relief under FRCP 56(f). C.B. Trucking, Inc. v. Waste Management, Inc., 137 F.3d 41, 44 (1st Cir. 1998). As decreed by the First Circuit:

[1]The first was filed well after the MSJ was served, at which time a diligent Plaintiff would have made an ex parte motion for an extension of time on the basis of Plaintiff's key witnesses trip.

> In other words, a party ordinarily may not attempt to meet a summary judgment challenge head-on but fall back on Rule 56(f) if its first effort is unsuccessful. Second, a party relying on Rule 56(f) must demonstrate that it was diligent in pursuing discovery before the summary judgment initiative surfaced. See Ayala-Gerena, 95 F.3d at 92 ("Rule 56(f) is designed to minister to the vigilant, not to those who slumber upon perceptible rights."). Finally, the party must "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist" and "indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion."

Id. Plaintiff has clearly attempted to meet a summary judgment challenge "head-on" and "fall back on Rule 56(f) if its first effort is unsuccessful."

Regardless, Plaintiff cannot make this showing under the auspices of **Rule 11**, as it has wasted an enormous amount of time without taking (or even noticing) any depositions including John Lombardi.[2] And to make this delay even more unwarranted, on December 8, 2005, Defendants' counsel wrote to Plaintiff's attorney Mark Hadden:

> "In addition, we would like to meet and confer with you on Defendants' Motion for Summary Judgment, which will be based on the terms of the agreement, which limit payment to when money from processing of your client's transactions is actually received, and which limits damages."

Plaintiff knew this Motion was coming and still did not notice a single deposition.

Moreover, Plaintiff does not even suggest how depositions of Lombardi and Perreault

---

[2]Plaintiff's only relevant friendly witness, European citizen Marc LePoutre, cannot even be compelled by subpoena to testify at trial, as he is no longer a party employee.

will establish the necessary actual and reasonable reliance for the fraud claim. Therefore, this Court should rule immediately.

## II. PLAINTIFF'S SECOND OBJECTION AND ATTACHED EVIDENCE

Plaintiff's second Object is required to contain its legal argument in the Memorandum, and be supported by admissible affidavits and evidence. Plaintiff has continued to obfuscate its unsupportable position by: (1) having affiants make conclusory legal arguments and factual conclusions in the body of their affidavits, including statements made "upon information and belief;" (2) citing in its Separate Statement to affidavit provisions that do not even arguably support a denial; and (3) submitting an unsigned affidavit. Most importantly, Plaintiff's brief and all of the declarations are almost completely devoid of specific dates, making them useless on the issue of reliance. It is neither this Court's nor Defendants' responsibility to reform these pleadings. Defendants are filing a lengthy and necessarily detailed Motion to Strike these portions of Plaintiff's affidavits.

## III. BREACH OF CONTRACT/MONEY HAD AND RECEIVED/BREACH OF IMPLIED COVENANT CLAIMS.

Plaintiff has failed to provide admissible evidence that supports its position. An affidavit must be made of one's own personal knowledge to be admissible. Michael Conway is not certified as an expert witness, has never been declared as such, has not provided an expert report or c.v., and has no personal knowledge of either ECB's accounting or PSW's personal finances. Moreover, Plaintiff produced both a copy of the signed Agreement and a copy of PSW's only form Agreement, the latter of which shows the fee as 13.5%, not "12,5%" (note the European

comma-decimal), which PSW suspects might be an alteration by Plaintiff.[3] Particularly egregious is Michael Conway's incredible conclusion that PSW was wrongfully using ECB-settlement monies to fund the Visa litigation (which Plaintiff concurrently seems to argue was PSW's duty). Perreault is not PSW's expert; rather, he is PSW's CPA, who acted as an unofficial comptroller, and who was asked to analyze spreadsheets created by Lombardi from raw data.

Conway's entire declaration must be stricken. Therefore, no competent evidence has been offered and there is no genuine issue of material fact.

## IV. PLAINTIFF HAS FAILED TO SAVE THE CONVERSION CLAIM.

Plaintiff's entire defense of this claim is a convenient purported statement from Lombardi to *non-affiant* LePoutre.[4] This statement cannot counter the language of the Agreement and the affidavit from Lombardi, which collectively establish that PSW does not, and is not required to, maintain isolated accounts for each customer. Lombardi Aff'd, ¶3.

Moreover, Plaintiff has not provided any opposing argument to deny that this is an improperly transformed contract claim, thereby conceding the argument. *See* Shaffer & Max, Inc. v. JM Engineering, Inc., 1994 WL 774682 (D.R.I. 1994); DeChristofaro v. Machala, 685 A.2d 258, 264 (R.I. 1996).[5]

---

[3]Regardless, even a 1% error would have a minuscule effect.

[4]Even if LePoutre signs this false declaration, it states only that Plaintiff's reserve funds were not being co-mingled "with other company monies." It doesn't concern commingling with other customers' reserve funds.

[5]Plaintiff's specific analysis of the facts of Larson v. Dawson (as opposed to the general holding) makes no sense, as PSW is neither Plaintiff's agent, nor a bank, and has not taken any

## IV. PLAINTIFF HASN'T EVEN ATTEMPTED TO SET FORTH A LEGALLY COGNIZABLE FRAUD CLAIM.

### A. Plaintiff Continues to Assert Generalities.

Once confronted with a Motion for Summary Judgment, Plaintiff can no longer rest on broad sweeping conclusions about "patterns of misrepresentation," inferred intent and presumed reasonable reliance, and must show specifics. Hinchley v. Nynex Corp., 144 F.3d 134, 145-46 (1st Cir. 1988) (rejecting unspecified misrepresentations on the basis of no reasonable reliance). Conclusory allegations of reliance such as "Regardless of whether or not Defendants and Plaintiff were in an 'adversarial posture', Plaintiff still expected Lombardi to be truthful and true to his word" are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); Int'l Assn of Machinists and Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 200 (1st Cir. 1996). This Court may now rule that reasonable reliance on an adversary is impossible as a matter of law.

Cognizant of Plaintiff's previous dodging in response to Interrogatories, Defendants spent an inordinate amount of time on each and every possible misrepresentation to show how all elements of fraud cannot be established for any one alleged misrepresentation. Plaintiff's casual defense of this claim, which appears to merely restate the FAC, is as follows:

---

"special deposits." A "special deposit" is defined as "the placing of specific kinds of money or property in the possession of the bank, with an obligation of the bank to return the identical thing deposited; the depositor retaining title." Keyes v. Paducah & I. R. Co., 61 F.2d 611, 612 (6th Cir. 1932). Not only has PSW not taken a "special deposit" from Plaintiff, PSW hasn't physically received *anything* from Plaintiff but a signature on the Agreement and has admitted to no such thing. PSW receives money from website users, via card-issuing banks, takes a cut, and remits the majority to its customers, like Plaintiff. Nothing came from Plaintiff.

- LePoutre was duped through a "pattern" of fraudulent activities (the "big picture" argument).
- Intent to defraud should be inferred.
- LePoutre continued to process in reliance, even if some of the statements were made after PSW stopped all processing, making this claim illogical.
- Statements regarding the future state of PSW and its plans are actionable.

***Defendants have successfully called Plaintiff's bluff.*** Plaintiff cannot show (1) misrepresentation of an existing fact, (2) intent to cause reliance by Plaintif on that misrepresentation; (3) actual and reasonable reliance on that misrepresentation; and (4) resulting damages from that misrepresentation. Defendants have pointed out the presence of opinion and predictions about the future, statements not made by PSW, statements without any possible reasonable (or even actual) reliance, and the complete lack of damages resulting from particular statements. Plaintiff responds by asking the Court to look at the "big picture" and find the actionable fraud claim buried somewhere in the affidavits.[6]

**B. Plaintiff Can Only Utilize Misrepresentations of Existing Fact.**

Opinions as to PSW's financial condition, made to third parties who are not stockholders, are not actionable. As stated in In re Frusher:

> [G]iven the nature of those representations (sales promotion), and the uncertain state of the industry at that point time, those representations have not been shown to be false when made, nor could the certainty of such projections have been reasonably

[6]Plaintiff's continued reliance on Lombardi's bombastic statement in an AVNOnline interview "I will pull no punches. If they don't reply in two weeks, on the morning of the fifteenth day we'll be standing there." is indicative of the weakness of their case. *See* Janet Conway aff'd ¶7.

> relied upon by Frusher. Statements of opinion cannot form the basis for a misrepresentation claim

146 B.R. 594, 597 (DRI 1992), *citing* Grassi v. Gomberg, 81 R.I. 302, 102 A.2d 523 (1954). Contrary to Plaintiff's cite-deficient opinion, Grassi is still the law of this state, and has been cited for Defendants' exact proposition by at least three other courts. *See* Wire v. Ent Wire Co., Inc., 1988 WL 1017291 *3 (RI Super.Ct., July 6, 1988); Rhode Island Hosp. Trust Nat. Bank v. Ellman, 1988 WL 1017221 *4 (RI Super.Ct., April 5, 1988); Waterman v. Anthony, 1979 WL 200292 *3 (RI Super.Ct., June 12, 1979). Moreover, the very articles and postings relied upon by Plaintiff show that the industry's health was exceedingly uncertain. Every opinion or future-speaking alleged misrepresentation set forth in the MSJ must be disregarded.

Plaintiff's case appears to be based solely on the fact that some alleged *gratuitous* promises, often made without authorization by Gardner or in public interviews, were not eventually fulfilled.[7] "[I]f plaintiff adduces no further evidence of fraudulent intent than proof of nonperformance of an oral promise, he will never reach a jury." Tenzen v. Superscope, Inc., 702 P.2d 212, 219 (Cal.1985). Moreover, Plaintiff has now fully admitted in the Statement of Disputed Facts that Lombardi believed H&H had a right to some of the ECB settlement *when promises were made*, showing that he did not have an intent to not perform *at that time*. PSW's position is clearly that Lombardi was incorrect in his prior honest belief. Being incorrect is not grounds for fraud.

**C. Plaintiff's Evidence Must be Analyzed Carefully.**

A quick glance at Plaintiff's Separate Statement demonstrates that the Court must spend

[7] Plaintiff has not suggested that there was any new consideration paid.

the time going through each and every piece of Plaintiff's supposedly contrary evidence to see what they even arguably concern. As Plaintiff has basically admitted the timeline of events, reasonableness of reliance can be determined as a matter of law.

In addition, Plaintiff believes that it has found a "smoking gun" in its Exhibit 9. As shown by paragraph 2 of Gardner's Affidavit, Mr. Gardner invented the "Executive Vice President" title and posted that release without his superior's knowledge. He was not an officer or high-level employee.

**D. The FRE 408 Statements**

Plaintiff's argument is completely disingenuous. Janet Conway's January 8 letter is clearly a mildly-veiled threat of litigation, stating "Achieving this objective will enable both parties to simply focus their attention on resolving issues related to the remaining funds, rather than having the situation explode into a convoluted litigation involving an assortment of damage claims against PSW and associated individuals." Further, Conway's request to find a "workable solution," directly contradicts the Opposition's claim that her all-or-nothing position refutes a finding of a compromise discussion.

Moreover, Plaintiff readily admits that FRE 408 prevents usage "to prove liability." As "misrepresentation of material existing fact" is an element of the cause of action of fraud, these statements clearly cannot supply the "misrepresentation element."

If Plaintiff is not using them to establish the misrepresentation element of a fraud claim, and there are no steps taken afterward that could qualify as reliance, actual or reasonable (processing was completed and Mr. Lee was retained to sue PSW within 3 weeks), then the <u>only</u> other logical use at this point would be to prejudice a jury against Defendants' counsel by putting

him on the stand, which is improper under FRE 403.

## V. PUNITIVE DAMAGES

Consistent with the rest of the Opposition, Plaintiff simply espouses new legal theories about limitation of liability provisions without citation. These are two sophisticated entities with equal bargaining power and only commercial injuries are claimed. These clauses are simply enforced.[8] Neither Rhode Island Hospital Trust National Bank v. Dudley Service Corp., 605 A.2d. 1325, 1327 (R.I. 1992), nor Star-Shadow Prods., Inc. v. Super 8 Sync Sound System, 730 A.2d 1081, 1084 (R.I. 1999) involved alarm companies. Moreover, Star-Shadow involved a fraud claim.[9] Since there is no fraud in the inducement alleged, Plaintiff's novel "fraudulent performance of a contract" argument simply doesn't provide a public policy reason to allow them to seek punitive damages for what is clearly a breach of contract claim. Regardless, since the tort claims cannot survive this Motion, this issue will become moot.

## VI. PLAINTIFF HAS PROVIDED NEITHER THE GROUNDS NOR THE REASON FOR PIERCING

Plaintiff apparently believes that PSW's accidental failure to timely file two annual reports after this litigation commenced provides grounds to pierce the corporate veil for some still unclear purpose. However, Plaintiff's own documentary evidence (Exhibit 16) shows that the company was active during all *relevant* times in this case, and was reinstated on December 5,

---

[8]Plaintiff has no grounds to rescind the Agreement, and has not made such a claim herein.

[9]Ostalkiewicz does not state that punitive damages are permitted in the face of a limitation of liability provision; rather, it clearly stands only for the propositions that the provisions are upheld, and that trial court properly found that the plaintiff couldn't establish fraud.

2005 once the lapse was noticed.[10] Regardless, Plaintiff has still not explained how Lombardi took actions to help himself, as opposed to PSW, such that the issue of piercing has any relevance to Plaintiff other than trying to gain some sort of settlement leverage.

## VII. CONCLUSION.

For the foregoing reasons, Defendants respectfully request that the Court grant this motion and dismiss this action.

DATED: March 4, 2006

MATTHEW J. LEONARD
RI State Bar # 6297
Salter McGowan Sylvia & Leonard, Inc.
The Heritage Building
321 South Main Street
Providence, Rhode Island 02903
Telephone: (401) 274-0300
Facsimile: (401) 453-0073

DAVID PAUL STEINER, Pro Hoc Vice approved
CA State Bar # **064638**
**David Steiner & Associates, a PLC**
**1925 Century Park East, Suite 2350**
**Los Angeles, CA 90067**
Telephone: (310) 557-8422
Facsimile: (310) 556-0336

Attorneys for Defendant PSW, Inc. and
John Lombardi

---

[10]This failure to file the requisite documentation was an error of counsel, and not PSW, Inc.

**UNITED STATES DISTRICT COURT**
**FOR THE STATE OF RHODE ISLAND**

| | |
|---|---|
| H&H INTERNET, N.V., a Netherlands corporation,<br><br>v.<br><br>P.S.W., INC., a Rhode Island corporation, d/b/a PSW BILLING; and JOHN LOMBARDI, individually, | Case No.: 04-324-L<br><br>**AFFIDAVIT OF MATTHEW GARDNER** |

I, Matthew Gardner, do hereby declare:

1. I make this declaration of my own personal knowledge, and could and would testify as to the matters contained herein under oath.

2. I was formerly employed by PSW, Inc. I handled a portion of PSW, Inc.'s marketing duties, and although I cannot remember my exact title, it was akin to "Director of Marketing." On at least one press release posted on the PSW website, I referred to myself as "Executive Vice President," because I thought it sounded more impressive for someone with such a title to be making that statement. I was neither an officer nor a director. I did so without telling or receiving permission from anyone with authority, including John Lombardi.

3. In fulfilling my job, I often had a strong difference of opinion from Lombardi, the head of the company. For example, he forbade all of us from posting on online bulletin boards, as he openly detested them. In my opinion, it was important for the company to have a presence on these bulletin boards, and decided to violate his direct order on a regular basis.

4. In July and August 2003, I began posting the company's various email correspondence with its customers on the GFY bulletin board under the name "PSW Billing Solutions." I subsequently began corresponding with other bulletin board members via board postings, because I believed it was in the best interest of the company. At no time did I tell Lombardi that I was doing this. I made every GFY posting under the username PSW Billing Solutions without any permission to do so, and without telling Lombardi or anyone else with authority. Everything I stated was based upon my personal knowledge or belief.

5. When Lombardi discovered my postings in late August 2003, he became extremely irate and berated me loudly.

I declare that the foregoing is true and correct pursuant to the laws of the States of Rhode Island and Florida and the United States.

Executed on March 1, 2006 at Fort Lauderdale, Florida.

Matthew Gardner

**UNITED STATES DISTRICT COURT**
**FOR THE STATE OF RHODE ISLAND**

| | | |
|---|---|---|
| H&H INTERNET, N.V., a Netherlands corporation, | ) | |
| v. | ) | Case No.: 04-324-L |
| P.S.W., INC., a Rhode Island corporation, d/b/a PSW BILLING; and JOHN LOMBARDI, individually, | ) | |

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I have, on this date, served a copy of the **DEFENDANTS REPLY TO PLAINTIFFS OBJECTION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY ADJUDICATION** and **AFFIDAVIT OF MATTHEW GARDNER** on the persons listed below by first-class mail, postage prepaid.

Mark C. Hadden, Esq.
Law Offices of Mark C. Hadden
68 Kennedy Plaza, Suite 3
Providence, RI 02903

Michael Jason Lee, Esq.
Law Offices of Michael Jason Lee
15281 Normandie Avenue
Irvine, CA 92604

Date: March 4, 2006